Case number 21-3686, USA v. Marlon Grant, oral argument not to exceed 15 minutes per side, Ms. Salinas for the appellate. Good morning and may it please the court. I'm Melissa Salinas with the University of Michigan Law School and I'd like to thank the court for granting a motion to allow a law student to argue the case and I'm here to introduce and supervise Jacob Shapiro. Thank you. Fine. Your Honor, may it please the court. My name is Jacob Shapiro and I'm here on behalf of Marlon Grant. I'd like to reserve three minutes for rebuttal.  Thank you. Your Honors, this court should reverse the district court because the initial warrant was not supported by probable cause and the good faith exception does not apply. Probable cause requires proximity. Proximity in time and proximity in space. What is unusual about this case is that the police had neither and rather than try to investigate further, they adopted a new legal theory seeking to overcome the difficulty. Faced with the problem that their only evidence was a single controlled by 47 days in the past, well beyond what this court has recognized as a reasonable delay, the police reframed their search as one for records. But this only exacerbated their problem of nexus. Warrants target property and not people and the police had no particularized evidence to believe that the records they sought were probably at the Tiffin Shop. Because both of these flaws were plain to see from the face of the warrant, no reasonable officer could believe it was valid under existing law. The 47 day delay is well beyond what this court has approved in similar drug investigation cases. In United States v. Hythen, similarly a case based on a single observed by, the mere lack of dates on the by observation was considered enough to render the evidence stale. It would be a strange result if an extensive known delay did not make the investigation stale, but unknown delay did. In Archibald v. Pinson, also cases predicated on a single controlled by, the warrants were sought within days and both were executed within two weeks. That time frame is the one far more appropriate to investigation here. Let me just make sure I understand the facts. So the car, the defendant's car was parked in front of the residence that was the subject of the search immediately prior to the by, is that right? Mr. Grant, first after informing the informant that he was going to deliver the contraband, went to the Tiffin Shop, spent some time at the Tiffin Shop, then reentered his car and drove to the site of the by. But there's no testimony or evidence that he had the drugs coming out of the shop to the car? No, your honor. And there was no other evidence of the car being in proximity to the address besides that incident? Not at the time of the by, your honor, no. Was it later found in front near the residence, the car? At the time the police searched, the car did go to the Tiffin Shop. It is important to note that that is a property where Mr. Grant maintains a t-shirt business. So it is reasonable that he would continue to visit that site, even if he were not continuing to use it for drugs. On the other hand, in United States v. Green, it can be usefully distinguished, their evidence that had been gathered over the course of a year indicating a very long running, large conspiracy, a repeated and complex project to trade drugs for stolen property at that place, was not considered stale, because it indicated that it would continue to go on for a long period of time. On the other hand, here we have a single controlled by, and that becomes stale much quicker. In order to avoid this problem, the police reframed their search as one for records. But the records cases the government has cited in its brief deal with financial crimes and other complex conspiracies, which would necessarily be expected to produce records in the case of the financial crimes. I thought it was a little odd too. Are there drug records cases out there? Your Honor, the government has cited a case from the Ninth Circuit involving an extremely complex drug smuggling operation, where among other things, the suspects were investing the proceeds in real estate, purchasing airplanes, purchasing other methods of procuring the drugs. There the records were highly obvious. There are not cases in which the government, alleging a simple known drug dealer, was able to search for records instead of the drugs. I'm just wondering, should we rely on our drug cases as an analogy for drug records cases? Or is there some distinction between the two that we should have a different test? Your Honor, you should rely on the precedent of the drug cases, because the evidence is the same, and because there is no common sense reason to treat the records differently from the drugs. In United States v. Freshet, this court clarified that the reason drug evidence goes stale quickly is because drugs are sold quickly, consumed quickly, and finally records are not. That gets into the final prong of Freshet, which is that drugs are moved easily. The records, where the evidence does not indicate that there are going to be extensive records in a particular place, there is no reason to think that the records will be in the same place that they were initially observed or initially suspected. After long periods of time. For instance, in United States v. Abood, the government was investigating a check-kiting scheme related to checking accounts associated with a particular business. It was a matter of common sense that those records would be located at that particular business for years as they were associated with legitimate bank accounts. And I think that is a very good segue into the problem of nexus. The warrant needs to target a particular place under Mays v. City of Dayton, a property and not a person. And in United States v. Brown, this court held that simply being a known drug dealer does not implicate all pieces of property the person owns. And here, there was no particularized reason to suspect that those records would be kept at the Tiffin Shop instead of any of the other places Mr. Grant had been observed or had access to. In fact, in the affidavit, and I quote, the affidavit said, quote, people who traffic controlled substances maintain records related to illegal activity often secreted in their residences or that of friends or associates, at their businesses, or at stash or safe houses. End quote. This statement shows no particularized suspicion of the Tiffin Shop. It is a general statement that the records exist somewhere and that the Tiffin Shop is one of the places that people might have kept them in the past. Could I ask you about the, you made reference to the term known drug dealer. What evidence is there in this record that Mr. Grant was a known drug dealer? I know there's this, you know, sort of this uncorroborated random tip that officers got eight or nine months before the control buy, but is there any other evidence that Mr. Grant was a quote, known drug dealer? No, Your Honor. The evidence is weak that Mr. Grant was a known drug dealer. There is the uncorroborated statement of the informant. There is the observed controlled buy. But the reference to Brown is that it is in service the point that even if the court concluded that Mr. Grant could be treated as a known drug dealer, that would not alone create probable cause to search the Tiffin Shop. Why isn't the one buy enough to make him a drug dealer? Your Honor, that is a... Do you have to have multiple deals to be a drug dealer? Your Honor, there should be some sort of evidence that the person's drug sale was not a one-time occurrence of convenience from their own supply, or otherwise indicating that the person is going to continue and repeat it. However, we agree that is a close question, and it is not a question that needs to be decided in the favor of Mr. Grant that he was not a known drug dealer. I suppose the case is fair. It is going to be very important for the good faith analysis, because if it is enough, obviously there is a warrant that was signed by a magistrate, and if it is enough that the police knew that the guy was dealt in drugs, then that could be good faith. But I guess you are saying there has to be something more than one deal to say that they are acting in good faith. Your Honor, the reason the good faith exception does not apply is because under Leon we do assume a general awareness of what the law requires for police. Consider the sea change in the law and in law enforcement practice that would result if any time the police were investigating a potential drug sale, they could reframe their request as one for records and avoid the staleness inquiry and get a very expansive idea of nexus. It would enable fishing expeditions. Well, they are not doing it on their own. I mean you have a magistrate judge who is making a determination, right? That is correct, Your Honor. But despite the name, the good faith exception does not require subjective good faith or subjective desire to follow what the magistrate has said. It requires a valid and objectively reasonable belief in the validity of the warrant. And in this case, any reasonable officer would know that this warrant was well outside regular police practice and was not business as usual in which they were titled to rely. And the fact that you are saying because it was drug records, that makes it out of the ordinary? The reason that it is out of the ordinary is because it is a single controlled by 47 days in the past, more than a month and a half. In the United States versus Brown, this court considered a delay of only 22 days, less than half the delay at issue here, to be relevant in establishing that there was no good faith on the part of the officers for their failure to investigate during that time. The records request, the shift to a records framework, does not defeat that problem. And the officers should know that because they have a general awareness that this is not a standard in the law. There is no separate analysis for records. It is always simply a matter of common sense. And in some cases, it is a matter of common sense that those records would be present longer than the actual contraband itself. And here, there is no particularized reason to suspect that. And there is no reason asserted in the affidavit that the officers believe that the Tiffin Shop and not somewhere else is the headquarters or other place where the records of the drug purchases made by other parties or the amounts that people may owe him or whatever other records might be generated as part of Mr. Grant's activity would be kept there and not somewhere else. And the officer would be able to see that and know that that was not regular practice. Accordingly, we ask this court to reverse the district court. Thank you. Okay. Thank you, Mr. Shapiro. Ms. Forten. Morning. Morning, Your Honors. I'm going to please the court, Laura Fort for the United States. I'd like to begin this morning by addressing the issue of probable cause and then move to nexus. I don't think I'll address particularity unless this court has any specific questions and then I'll move on to the good faith exception. I would agree that this case is unusual because of the way that Grant structured the transaction in this case. The connections to the Tiffin Avenue location over a two-day transaction and the manner in which he was trying to avoid detection, which also raised the likelihood that he would keep records. And I'll talk about how that fits into probable cause and nexus. First and foremost, there was probable cause for the initial set of document warrants for the Tiffin Avenue property. And the property is two parts. In the back is the apartment, which is the north side that they saw him frequent, and then there's the shop in the front. The investigators had received a tip that he was a large-scale grant, was a large-scale drug trafficker of cocaine in the Sandusky area. And about six, eight months later, they received information from a confidential informant about being able to obtain 14 grams of crack cocaine from Grant. And the first tip was not corroborated in any way? Correct. It's just kind of how he got on the radar, Your Honor. And so eight months later, they received this tip that the confidential informant can buy the crack cocaine, and that proved to be reliable through the investigation, through some recorded monitored calls, through surveillance, and through the controlled buy itself. There were two recorded calls, first to arrange the controlled buy, which was recorded, the client said it was drug-related, and then the second day, February 2nd, in 2019, to arrange the $700 payment. Now this was broken up over two days. The first day Grant leaves his Monroe Street property, that's his residence, drives to Tiffin, which was what was searched for the documents, and then he goes to the CI's residence, where he notifies the CI that he's left a chip bag at the doorstep and the drugs are there. But see, there's no indication that he went into Tiffin that first time, or is it no evidence one way or the other? They saw him walking away from that north side entrance, which is where that apartment is, it's at the rear of that property. They didn't see him enter or exit Tiffin at that point? Just walking away from that entrance at the north side. And then he is seen at the confidential informant's residence. He tells the informant that he's left the bag there. The informant is under surveillance, and he is seen retrieving the bag. It contains cocaine. Any details? This is a comment that I just can't resist making. Whoever heard of a drug dealer who trusted the person to whom he was delivering drugs to pay him the next day? I mean, those are the most extraordinary facts. It is an extraordinary fact, and I agree with you, Your Honor, and I think that's what makes this case different and why it's more likely that there's going to be documents in this case, because he's essentially fronting the drugs to someone. So it's on credit, and it's more likely that he has to keep track of who his customer is, what he delivered, and what is owed, and that is why it's more likely that there's going to be documents there to keep track of what's going on. It's extraordinary. It is extraordinary, Your Honor, and that's what makes this case a little different. And then when he arranges... Can I ask one question? Yes, Your Honor. As to that, this whole documents thing. You know, what does this mean not only for this case but future cases  I mean, the government can come in and just argue, well, the defendant had records, you know, based upon the officer's experience, that the records are maintained in a second location or whatever, and the records do not dissipate over some short period of time, that they're there for years. I mean, it's just sort of a slippery slope, isn't it? I think, you know, unfortunately there's not a lot of case law. I mean, on document warrants themselves for drug cases, we did cite two cases, but they actually didn't address the staleness issue. The Blair decision was more on the particularity point and a claim about subterfuge, which was rejected, and then the Washington case, which I'll actually talk about for good faith, which I think is kind of a key case. You know, certainly it's a white-collar fraud case with Abood, which is three years, but I would say that those cases are helpful in establishing that there is a fundamental distinction between looking for drugs that are, you know, consumable, they're for immediate distribution, they're gone just about as fast as their package, versus tangible documents, paper items that are kept for a longer duration. And I think if you have a defendant that is fronting drugs to somebody, it's more likely that they're going to be keeping track of what they provided, how much is owed, and that raises the likelihood of finding documents. And 47 days is not excessive when you're looking at documents. I mean, even in your personal life, you have documents for longer than 30 days. So if the defendant here has not been fronting, would you have the same argument? Because otherwise we just sort of write out staleness, it seems to me, and in future cases the government can just come in and say, I'm seeking records. Well, I think the fact that it's fronted makes this case unique. Documents are going to be around much longer, though. The question is how much time. I think 47 days in this case is not excessive, simply because it's something that you would hang on to documents even in your personal life for 47 days. It's not years. Let's move on to the other arguments. That's just a concern. And I understand that, Your Honor. And I would say that the cases that they're relying on for staleness are not applicable here because those are drug warrants. And we cite those cases generally just for establishing the nexus in kind of a broader sense that it ties it. Does the affidavit reference the fronting as the basis for why they want documents? It does not, Your Honor. Is there anything in the affidavit explaining why they think there would be documents? When you're using a secondary location like they were here, because both instances he leaves his home and he picks up the drugs and then goes to deliver it, and then when he gets the payment at his home at Monroe, he goes back to the Tiffin property and they believe that he's using this as a secondary location, that that's common for drug dealers. And I would say that there was additional surveillance that suggested that he was using this as a secondary location. Grant presumes that there was no surveillance during that 47-day period.  In this passage of the surveillance paragraph, when you look at it chronologically, everything in this investigation is in chronological order and the surveillance comes after the controlled buy and it says that on numerous occasions they spotted Grant at this location staying, again, at this north side entrance where the apartment is, that he stays a short amount of time, which is consistent with drug trafficking. And even if you don't have dates, you still have a temporal context and significance in that it's telling the issuing magistrate this isn't isolated, this isn't a one-time occurrence, this isn't even two-part, this is numerous. It's on many occasions that he's behaving in a similar manner. It shows a continuity in terms of drug trafficking, that he's using this location as a secondary base. And I think that defeats the staleness claim because it shows that there is an ongoing activity. The Hython case that they've cited is not at all similar because that's a drug warrant. You had a controlled buy involving a third party and a confidential informant and there was no date for the controlled buy. We have a date for the controlled buy. It happened over two days in February. The Green case also is not instructive. That's a drug warrant, too, where the connection, the defendant is stopped in a different car with drugs and then his personal car is at his residence. A drug dog hits on it, alerts. There's no indication that the car was ever searched. There's no indication that there was drugs in the car. There's no indication that there was suspicious activity at the residence. That's not at all what we had here. And, in fact, the Brown case said it would have been sufficient if the drugs had been driven in the car to the buy. Well, that's what we have here. That's the missing piece. And that's why the 22 days, with regard to a drug warrant, is not instructive in Brown. We have what was missing in Brown. And I would say, kind of moving to the good faith exception, that this case is more like Washington, which we cited generally for the good faith exception. That involved two controlled buys. And it was actually a document warrant case where the court did not necessarily make a finding on the probable cause and just went to good faith. There was two controlled buys within several days of each other. And then several days later, the car that was used in one of the controlled buys was parked there. And also the defendant had left the residence before one of the controlled buys. And the court found that there was a sufficient nexus tying the defendant to the car, tying the defendant to the house, and also a nexus between the car and the house. We have that here. And I would say that in that case, there might be a little more ambiguity in terms of whether the house was actually being used for a dual purpose, whether it was a residence plus being used for drug trafficking. Here we have this secondary location that appears to be being used for drug trafficking. So I'd say the fact pattern here is much more compelling than in Brown. I'm sorry, in Washington. And so certainly if the good faith exception applies in Washington, it should apply here. And this is far from a bare bones affidavit, which this court, in the Christian case, explained that it is a designation that is reserved for an affidavit that contains suspicions and conclusions without providing the underlying basis for the reliability and basis of knowledge. We have several paragraphs talking about this controlled buy, the two recorded calls, the fact that Grant is going each time from his residence. He goes to the Tiffin property before the delivery and then after he gets the money, he's going back to that Tiffin property. The explanation that he does this to avoid detection. And the district court found that that was quite significant, that it showed a level of sophistication beyond just being a dime bag dealer when he's breaking it up into this two-part transaction  And then again, I think the fact that the type of evidence that's sought in this case is highly relevant documents. There's more likelihood that he is going to be keeping documents based on the way he structured it. They have a longer shelf life than drugs. And you don't have a temporal void with the controlled buy like you do in Hython. And I would suggest that this is not a case where you can say, even if there isn't enough for probable cause that the indicia is so lacking, that it would render belief in its existence unreasonable or that it would be obvious that it was facially deficient. It wasn't obvious to the district court. In fact, the district court actually found, a very experienced district court judge found, there was probable cause. And I would suggest that if a district court judge thinks there's probable cause, then that underscores that the officers, a well-trained officer without specialized legal training, could not be expected to see that there's a deficiency in the warrant if a district court thinks there's probable cause. And applying the exclusionary rule here would not deter deliberate recklessness or gross misconduct in this case. The officers did everything that you would hope that they would do. They carefully selected the type of warrant that the facts supported in this case. They asked for documents. They did not abandon their search for documents, as Grant has suggested. They actually seized two documents at page ID 259. They stopped, they immediately ceased the search when they found items, drugs and guns in plain view and went and asked for another warrant because those items fell outside the scope. And that's exactly what you would hope officers would do. And then when they re-initiated it, they didn't abandon their search. I'd like to go back to the good faith assumption again. So it's not enough that they just knew he was a drug dealer. It was the fact that he was seen in this car near the places that were to be searched immediately prior to the sale. And then he went back in that car to the same place. Is that what you're hanging, the facts you're hanging the good faith exception on? Yes, that the car was connected to this place twice and then that there's also, it's not just that, but you also have the surveillance that shows that on numerous occasions he's behaving in a similar manner that's consistent with drug trafficking, that's consistent with how he conducted himself the day of the controlled buy. He's just going there for a short amount of time and then he's leaving. And then they confirm the day of the warrant that he is renting this property and that the car that he used to deliver drugs is parked there. So there's still that connection there. The connection that was lacking in the Brown case is present here. And it was present in the Washington case and I would say that that's how you can reconcile those two cases is that there is a connection between the house, the car, and the defendant. And you didn't have that in Brown but it was present in Washington and it's present here and I would say that the facts here are stronger. I see my time is up, Your Honors, unless this Court has further questions, we'd ask this Court to affirm the District Court's decision denying suppression. Okay. Thank you, Ms. Ford. Mr. Shapiro, I think you have three minutes of rebuttal. Mr. Shapiro, could you just respond to her points about the good faith? Why those facts are not sufficient here? Of course. Your Honor, even if the fronting shows, and I point out that it was not included in the affidavit, and this cannot be a basis for the warrant, even if he kept some record at some time, the question is would that record 47 days later both exist and would it be at Tiffin? The answer is no, or at least there's not probable cause to believe there is. The Government Counsel attempts to make a great deal of the fact that Mr. Grant continued to frequent the location of the Tiffin shop, but merely the fact that he continued to frequent a location that he uses for other reasons does not mean that he is continuing to sell drugs from that place. Government Counsel ignored and did not strongly address the 47-day period, and that is telling. The United States v. Brown, being arrested with other drug dealers, being connected to a broader drug conspiracy, and a only 22-day delay in investigation was enough to render the good faith exception inapplicable. How could a 47-day delay with only a single controlled buy not render the good faith exception similarly inapplicable? It is not multiple buys just because he continued to frequent the place, and in the end that flaw remains fatal, that there is a 47-day delay joined to the fact that it was only a single controlled buy. On the other hand, in Blair, which Government Counsel brought up again, the criminal conspiracy there was complex. It involved multiple prostitutes that were being used by the Blairs for their scheme. It continued over a long period of time, and therefore it would naturally generate a wider variety of records, and as Government Counsel conceded, there was suspicion that and probable cause to believe that there was an accompanying financial crime. That is what rendered the probable cause of this and the good faith exception inapplicable. Here there is neither. There is just the single controlled buy over a month and a half in the past, and no reasonable officer would objectively believe that that warrant with that little evidence, with that great delay, was valid under existing law, and therefore the good faith exception is not applicable. We ask that you reverse the District Court. Thank you for your time, Your Honors. Okay, thank you, Counsel, for your arguments today, and again, we would like to thank you. Mr. Shapiro is a student at the University of Michigan Law School, and Ms. Salinas is Supervising Attorney and I believe Director of the Clinic for taking this case under the Criminal Justice Act. Again, real service to our system at large and to Mr. Grant. So thank you. You did a great job, by the way. Obviously put a lot of time and effort into preparation and you know the record, you read the cases, and thought you were thoroughly prepared. Ms. Ward, we thank you, of course. Usual customary preparation and thoroughness as well. With that, the case will be submitted, and I think that completes our oral argument calendar for today, so you may adjourn court.